**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TEXAS INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>GESNER ELOI; ARIA GROUP INC.; DAT EXPRESS INC.; ARIA GROUP MERGER SIX, LLC; ARIA GROUP HOLDINGS SIX LLC; ARIA LOGISTICS, LLC; ARELIS BONILLA; CARLOS A. ABREU VARGAS<br><br>Defendants. | No. 2:26-cv-13108 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW, comes Plaintiff, Texas Insurance Company ("TIC"), by and through its attorneys, GORDON REES SCULLY MANSUKHANI, LLP, and files the following Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 1332, *et seq.*, averring as follows:

**PARTIES**

1. Texas Insurance Company is a Texas corporation that maintains its principal place of business in Omaha, Nebraska, specifically, at 10805 Old Mill Road, Omaha, NE 68154.

2. TIC is an insurer in the business of writing, producing, and issuing policies of insurance.

3. Upon information and belief, Defendant Gesner Eloi ("Eloi") is a resident of the State of New Jersey, with his last known residence being at 440 Ashley Street, Apartment 2, City of Perth Amboy, County of Middlesex, and State of New Jersey 08861.

4. Upon information and belief, Defendant DAT Express Inc. ("DAT") is a Pennsylvania corporation with its principal place of business being 477 North Lewis Road, Suite 425, Royersford, Pennsylvania 19468.

5. Upon information and belief, Defendant Aria Group Merger Six, LLC ("Aria Group Merger") is a Delaware single member limited liability company with its principal place of business being 95 Cedar Lane, Suite 5 or Suite 8, Englewood, New Jersey 07631 and its sole member being Arelis Bonilla, a New Jersey resident who, upon information and belief, resides at 343 Robin Road, Englewood, New Jersey 07631.

6. Upon information and belief, Defendant Aria Group Holdings Six, Inc. ("Aria Group Holdings") is a Delaware corporation with its principal place of business being 95 Cedar Lane, Suite 5 or Suite 8, Englewood, New Jersey 07631.

7. Upon information and belief, Defendant Aria Logistics, LLC ("Aria Logistics") is a Delaware single member limited liability company with its principal place of business being 95 Cedar Lane, Suite 5 or Suite 8, Englewood, New Jersey 07631, with its sole member being Arelis Bonilla, a New Jersey resident who, upon information and belief, resides at 343 Robin Road, Englewood, New Jersey 07631.

8. Upon information and belief, Defendant Arelis Bonilla ("Bonilla") is a New Jersey resident and resides at 343 Robin Road, Englewood, New Jersey 07631.

9. Upon information and belief, Defendant Carlos A. Abreu Vargas ("Abreu Vargas") is a resident of New Jersey, with his last known residence being at 340 North 7th Street, Apartment 7, Newark, New Jersey 07107.

10. Defendant Aria Group Inc. ("Aria Group" or "the Insured") is a Pennsylvania corporation with its principal place of business at 95 Cedar Lane, Suite 5 or Suite 8, Englewood, New Jersey 07631.

11. Upon information and belief, none of the Defendants or any of the members of the limited liability companies are residents of Texas or Nebraska.

**JURISDICTION AND VENUE**

12. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, in that (i) complete diversity of citizenship exists between the Plaintiff and Defendants and (ii) the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

13. Venue of this action in the District of New Jersey is proper pursuant to 28 U.S.C. § 1391(b), in that defendants are either located, reside, or regularly conduct business in this judicial district. Venue is also proper in the District of New Jersey under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

14. TIC brings this Declaratory Judgment Action seeking a declaration as to the rights and obligations of the parties under an insurance policy—Policy No. BRPCBLTPA011300_089217_02— issued by TIC to ARIA Group Inc. ("Policy")—as it relates to the Lawsuit pending at Docket number MID-L-007036-24 in the Superior Court of New Jersey, Law Division, Middlesex County (the "Underlying Lawsuit"), which concerns bodily injuries that were allegedly sustained by Gesner Eloi as the result of a motor vehicle accident on November 21, 2023 ("Claim"). The injuries allegedly have been caused, in part, by the alleged negligence of Carlos A. Abreu Vargas; a John Doe Driver; David Roes A-Z; XYZ Companies 1-10; Amazon Logistics Inc., PP Perfect, Inc; and Aria Group, Inc., DAT Express Inc., Aria Group Merger Six,

LLC, Aria Group Holdings Six, Inc., and Aria Logistics, LLC (hereinafter collectively referred to as the "Aria Entities"); and Arelis Bonilla.

15. An actual controversy has arisen between the parties in that (i) Ms. Bonilla and the Aria Entities submitted a claim under the Policy ("Claim"), and (ii) TIC, while providing a defense to the Aria Entities, Bonilla and Abreu Vargas, subject to a full, complete, and continuing reservation of rights, has taken the position that the Policy does not provide coverage for the Claim or Underlying Lawsuit, because: a.) DAT, Aria Group Merger, Aria Group Holdings, Aria Logistics, and Bonilla do not qualify as insureds under the Policy; and b.) the Freightliner truck involved in the Underlying Lawsuit did not qualify as a covered auto, pursuant to the Scheduled Covered Autos section of the Policy.

**THE UNDERLYING LAWSUIT & CLAIM INFORMATION**

16. The operative Complaint is the Third Amended Complaint and Jury Demand ("Third Amended Complaint"), filed by Gesner Eloi, which names, *inter alia*, DAT, Aria Group Merger, Aria Group Holdings, Aria Logistics, Aria Group, Arelis Bonilla, Carlos A. Abreu Vargas, Amazon Logistics Inc. ("Amazon"), PP Perfect, Inc. ("PP Perfect"), a John Doe Driver, David Roes A-Z and XYZ Companies 1-10 as defendants. A true and correct copy of the Third Amended Complaint is affixed hereto as Exhibit 1.

17. The Third Amended Complaint alleges that Plaintiff, Gesner Eloi, was operating a 2019 Kia motor vehicle registered in the State of New Jersey (the "Kia") on November 21, 2023, while a Freightliner tractor (the "Tractor"), hauling a motor vehicle trailer asset bearing number V565177 (the "Trailer"), (together referred to as the "Truck") was travelling southbound in the middle lane at Interstate 95, or about mile marker 111.4 in New Jersey, when the Truck merged into the middle lane, striking the Kia. See Ex. 1 at ¶¶ 2; 4-7; 77-78.

18. The Third Amended Complaint alleges that, after striking the Kia, the Truck swerved into the right lane and fled the scene, and that Plaintiff sustained bodily injury, requiring that he receive and undergo various treatment for the injuries he sustained. See Ex. 1 at ¶¶ 79-81.

19. The Third Amended Complaint alleges that, on November 21, 2023, DAT was the owner of the Tractor. See Ex. 1 at ¶ 9.

20. The Third Amended Complaint alleges that DAT was merged into another business entity on or about December 5, 2022. See Ex. 1 at ¶ 12.

21. The Third Amended Complaint alleges that Aria Group Merger Six, LLC is a fictitious name for a business. See Ex. 1 at ¶ 17.

22. The Third Amended Complaint alleges that DAT was merged into Aria Group Merger. See Ex. 1 at ¶ 18.

23. The Third Amended Complaint alleges that Aria Group Merger was the owner of the Tractor. See Ex. 1 at ¶ 19.

24. The Third Amended Complaint alleges that DAT was merged into Aria Group Holdings. See Ex. 1 at ¶ 23.

25. The Third Amended Complaint alleges that Aria Group Holdings was the owner of the Tractor. See Ex. 1 at ¶ 24.

26. The Third Amended Complaint alleges that DAT was merged into Aria Logistics, or an entity formed by or on behalf of Aria Logistics. See Ex. 1 at ¶ 28.

27. The Third Amended Complaint alleges that Aria Logistics or an entity formed by or on behalf of Aria Logistics was the owner of the Tractor. See Ex. 1 at ¶ 29.

28. The Third Amended Complaint alleges that DAT was merged into Aria Group or an entity formed by or on behalf of Aria Group. See Ex. 1 at ¶ 33.

29. The Third Amended Complaint alleges that Aria Group, or an entity formed by or on behalf of Aria Group, was the owner of the Tractor. See Ex. 1 at ¶ 34.

30. The Third Amended Complaint alleges that Bonilla was the individual who authorized the merger on behalf of DAT into Aria Group Merger. See Ex. 1 at ¶ 38.

31. The Third Amended Complaint alleges that Aria Group Merger is a fictitious name used by Bonilla. See Ex. 1 at ¶ 39.

32. The Third Amended Complaint alleges that, on November 21, 2023, at approximately 10:23 a.m., and at all times mentioned herein, Bonilla was the owner of the Tractor. See Ex. 1 at ¶ 40.

33. The Third Amended Complaint alleges that Abreu Vargas was the owner of the Tractor. See Ex. 1 at ¶ 54.

34. The Third Amended Complaint alleges that Abreu Vargas was the lessor of the Tractor. See Ex. 1 at ¶ 55.

35. The Third Amended Complaint alleges that Abreu Vargas was the lessee of the Tractor. See Ex. 1 at ¶ 56.

36. The Third Amended Complaint alleges that Abreu Vargas was the operator of the Tractor. See Ex. 1 at ¶ 57.

37. The Third Amended Complaint alleges that DAT entered into an agreement with Abreu Vargas to provide various services, including, but not limited to, transporting/hauling the Trailer on November 21, 2023. See Ex. 1 at ¶ 59.

38. The Third Amended Complaint alleges that Aria Group Merger entered into an agreement with Abreu Vargas to provide various services, including, but not limited to, transporting/hauling the Trailer on November 21, 2023. See Ex. 1 at ¶ 60.

39. The Third Amended Complaint alleges that Aria Logistics, or an entity formed by or on behalf of Aria Logistics, entered into an agreement with Abreu Vargas to provide various services, including, but not limited to, transporting/hauling the Trailer on November 21, 2023. See Ex. 1 at ¶ 61.

40. The Third Amended Complaint alleges that Aria Group, or an entity formed by or on behalf of Aria Group, entered into an agreement with Abreu Vargas to provide various services, including, but not limited to, transporting/hauling the Trailer on November 21, 2023. See Ex. 1 at ¶ 62.

41. The Third Amended Complaint alleges that Bonilla entered into an agreement with Abreu Vargas to provide various services, including, but not limited to, transporting/hauling the Trailer on November 21, 2023. See Ex. 1 at ¶ 63.

42. The Third Amended Complaint contains the same allegations regarding a John Doe Driver as those regarding Abreu Vargas. See Ex. 1 at ¶¶ 65, 67-71, 73.; 66.

43. The Third Amended Complaint further names David Roes A-Z and XYZ Companies 1-10 as individuals and business entities not yet known who are responsible for the underlying motor vehicle accident. See Ex. 1 at ¶¶75-76.

44. Based on these allegations, the Third Amended Complaint asserts negligence claims against Abreu Vargas and a John Doe Driver for negligence, alleging a breach of a duty to operate the Truck in a safe and careful manner. See Ex. 1 at Count One, Count Two.

45. Further based upon these allegations the Third Amended Complaint asserts a negligence claim against DAT, Aria Group Merger, Aria Group Holdings, Aria Logistics, Aria Group, PP Perfect, and Abreu Vargas, which alleges that, respectively, Abreu Vargas and a John Doe Driver were in physical charge, operation, management, and control of the Truck, with each

of the Aria Entities', Amazon, and PP Perfect's knowledge, consent, and permission, either express or implied; that Abreu Vargas and the John Doe Driver were employed, as an independent contractor, and special employee of each of the Aria Entities and PP Perfect; that the John Doe Driver was employed by, an independent contractor, and a special employee of Abreu Vargas; that they were operating the Truck within the scope of their employment; and that each Aria Entity, Abreu Vargas (with respect to the John Doe Driver), and PP Perfect is vicariously liable for the negligence of its employee and further negligent in the hiring, screening, training, and supervision of its employee. The Third Amended Complaint further avers that, as a result of each of the Aria Entities', Abreu Vargas (with respect to the John Doe Driver), and PP Perfect's negligence, it was foreseeable that Abreu Vargas and the John Doe Driver's actions and/or omissions would result in the aforementioned serious injuries and damages to Plaintiff. See Ex. 1 at Count Three.

## POLICY INFORMATION

46. TIC issued the Policy to ARIA Group Inc. at its address, 70 Buckwalter Road, Suite 425, Royersford, PA 19468. A true and correct copy of the Policy is attached hereto as Exhibit 2.

47. The Policy was in effect from May 1, 2023 through May 1, 2024. See Ex. 2.

48. The Policy contains, in relevant part, both an Auto Policy and a Commercial General Liability Policy. See Ex. 2.

49. The Policy contains a Schedule of Coverages and Covered Autos, providing Bodily Injury and Property Damage Liability for Covered Autos 7, 8 & 9, with limits of $1,000,000.00 (one million dollars). See Ex. 2.

50. The Policy contains certain Scheduled Covered Autos, as follows:

ITEM TWO: SCHEDULED COVERED AUTOS

The Coverage afforded hereunder only covers such automobiles as scheduled with the Carrier.

**AUTO LIABILITY**

| MAKE | MODEL | YEAR | VIN | EFF DATE | EXP DATE |
|---|---|---|---|---|---|
| Utility | Trailer | 2018 | 1UYVS2531J7390101 | 05/01/2023 | 05/01/2024 |
| Utility | Trailer | 2018 | 1UYVS2533J7390102 | 05/01/2023 | 05/01/2024 |
| Utility | Trailer | 2020 | 1UYVS2536L7990311 | 05/01/2023 | 05/01/2024 |
| FREIGHTLINER | 125 | 2014 | 3AKJGEDV2ESFY3955 | 05/01/2023 | 05/05/2023 |
| FREIGHTLINER | 125 | 2015 | 3AKJGEDVXFSGC9500 | 05/01/2023 | 05/01/2024 |
| FREIGHTLINER | 125 | 2016 | 3AKJGLD61GSGY7188 | 05/01/2023 | 05/23/2023 |
| FREIGHTLINER | Cascadia | 2018 | 3AKJHHDR8JSJM6034 | 05/01/2023 | 05/01/2024 |
| Volvo | VNR | 2022 | 4V4WC9EH5NN602265 | 05/01/2023 | 05/01/2024 |
| Volvo | VNR | 2022 | 4V4WC9EHXNN602262 | 05/01/2023 | 05/01/2024 |

See Ex. 2 at 6.

51. The Scheduled Covered Autos include a 2014 Freightliner 125, VIN number 3AKJGEDV2ESFY3955 (the "2014 Freightliner"), which was insured under the Policy for only four (4) days, from May 1, 2023 through May 5, 2023.

52. The Scheduled Covered Autos also include a 2015 Freightliner 125, VIN number 3AKJGEDVXFSGC9500 (the "2015 Freightliner"), which was insured under the Policy from May 1, 2023 through May 1, 2024.

53. The Policy further contains certain Scheduled Covered Drivers, as follows:

ITEM FOUR: COVERED DRIVERS

The coverage afforded hereunder is limited to those named drivers as scheduled with the Carrier.

| LAST | FIRST NAME | AGE | DL # | STATE | EFF DATE | EXP DATE |
|---|---|---|---|---|---|---|
| Trejos | Juan | 32 | 32949552 | PA | 05/01/2023 | 05/01/2024 |
| Salazar | Jorge | 50 | 5556070329 | NJ | 05/01/2023 | 05/01/2024 |
| Acosta | Wilberto | 56 | A17157827308662 | NY | 05/01/2023 | 05/01/2024 |
| Martin | Justin | 37 | M06914236805852 | NY | 05/01/2023 | 05/01/2024 |
| De Jesus Nunez Tavarez | Yonathan | 28 | N92727906402952 | NY | 05/01/2023 | 05/01/2024 |
| Rodriguez | Bladimir | 29 | R60940936511931 | NY | 05/01/2023 | 05/01/2024 |
| Reyes | Alexis | 38 | S04810190011842 | NY | 05/01/2023 | 05/01/2024 |
| Taveras | Gerardo Taveras | 51 | T09102790007712 | NY | 05/01/2023 | 05/01/2024 |

See Ex. 2 at 7.

54. The Policy contains the following Insuring Agreement in the Auto Policy Coverage Form – written on Form No. RPCA005:

**SECTION I - COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a Coverage on the Declarations designate the only "autos" that are covered "autos". It is further agreed and understood that You have to advise the Company and receive written confirmation prior to effecting coverage for any covered automobiles to be scheduled as a covered automobile.

…

| | | |
|---|---|---|
| 7 | "Autos" Specified On Schedule | Only those "autos" described on the schedule and any "trailers" you don't own while attached to power units you own. You must notify prior to and receive written confirmation from the Company for coverage to be effected. |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business. |

55. The Policy contains a Defense endorsement (form RPCA016), which modifies Section II – Liability Coverage A, as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DEFENSE**

This endorsement modifies insurance provided under the following:

SECTION II - LIABILITY COVERAGE, A. Coverage has been deleted in its entirety and replaced with the following:

**SECTION II - LIABILITY COVERAGE A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance, or use of a covered "auto". We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies caused by an "accident" and resulting from the ownership, maintenance, or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident." We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate.

See Ex. 2 at 48.

56. The Policy contains a provision addressing Who Is An Insured, which reads as follows:

**1) Who Is An Insured**

The following are "insureds":

a. You for any covered "auto";

b. Anyone else whom you have advised the Company and received formal

approval in writing from the Company while using with your permission a covered “auto” you own, hire, or borrow **EXCEPT**

i. The owner or anyone else from whom you hire or borrow a covered “auto” unless you have advised the Company in writing prior to effecting coverage and received written confirmation from the Company of the acceptance of coverage.

ii. Your “employee” if the covered “auto” is owned by that “employee” or a member of his or her household.

iii. Someone using a covered “auto” while he or she is working in a business of servicing, repairing, “autos: unless that is part of your business is yours.

iv. Anyone other than your “employees”, partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their “employees”, while moving property to or from a covered “auto”.

v. A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered “auto” owned by him or her or a member of his or her household.

vi. Anyone liable for the conduct of an “insured” described above, but only to the extent of that liability.

vii. “Permissive users” who are users of a covered auto, other than “insureds”, who are not approved in writing by the Company. Coverage for permissive users is subject to reduction to statutory

> minimums. To the extent permitted under the applicable state law, the limits of coverage shown in the Declarations page are reduced to the state mandatory minimums for bodily injury or death and property damage when there is a permissive user of the covered "auto".

See Ex. 2. at 23-24.

57. The Definitions Section of the Policy provides:

**SECTION VI - DEFINITIONS**

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means:

1) A land motor vehicle, designed for travel on public roads; or

2) Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these

See Ex. 2 at 33.

58. The Policy contains the following insuring agreement, via a Commercial General Liability Endorsement (form RPCA030), which contains the following additional definitions used in the Endorsement:

**COMMERCIAL GENERAL LIABILITY ENDORSEMENT**

Various provisions in this endorsement restrict coverage. Read the entire endorsement carefully to determine **your** rights, duties, and what is and is not covered.

**We** agree with **you** that the following coverage is added to **your** Commercial Auto Policy:

**ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT**

The following definitions are in addition to those found in the Commercial Auto Policy. Except as otherwise defined in this endorsement, terms appearing in boldface type, whether in the singular, plural, or possessive, will have the following meanings:

…

7. **"Insured"** means:

a. If **you** are designated on the **Declarations Page** as:

…

(iv) An organization other than a partnership, joint venture, or limited liability company: **you**. **Your** executive officers and directors are also **insureds**, but only with respect to their duties as **your** officers or directors. **Your** stockholders are also **insureds**, but only with respect to their liability as stockholders.

…

**<u>SECTION I – COVERAGES</u>**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**Insuring Agreement**

1. We will pay those sums, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, that the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. **We** will have the right and duty to defend the **insured** against any **suit** seeking those damages. However, **we** will have no duty to defend the **insured** against any **suit** seeking damages for **bodily injury** or

**property damage** to which this insurance does not apply. **We** may, at **our** discretion, investigate any occurrence and settle any claim or **suit** that may result.

However:

a. The amount **we** will pay for damages is limited as described in Section II – Limits Of Liability; and

b. **Our** right and duty to defend ends when **we** have used up the applicable limit of liability in the payment of judgments or settlements under Coverages A and B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

…

**EXCLUSIONS READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

Coverage under Coverage A does not apply to:

**6. Aircraft, Auto or Watercraft**

**Bodily injury** or **property damage** arising out of:

a. The ownership, maintenance, use, or entrustment to others of any aircraft, **auto** or watercraft owned or operated by, or rented, leased, or loaned to, any **insured**; or

b. Any **auto you** do not own, lease, hire, rent or borrow that is used in connection with **your** business.

Use includes operation and **loading or unloading**.

This exclusion applies even if the claims against any **insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **insured**, if the **occurrence** that caused the **bodily injury** or **property damage** involved the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft that is owned or operated by, or rented or loaned to, any **insured**.

This exclusion does not apply to:

a. A watercraft while ashore on premises **you** own or rent;

b. A watercraft **you** do not own that is:

(i) Less than 26 feet long; and

(ii) Not being used to carry persons or property for a charge;

c. Parking an **auto** on, or on the ways next to, premises **you** own or rent, provided the **auto** is not owned by, or rented or loaned to, **you** or the **insured**;

d. Liability assumed under any **insured** contract for the ownership, maintenance or use of aircraft or watercraft; or

e. **Bodily injury** or **property damage** arising out of:

(i) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of **mobile equipment** if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

(ii) The operation of any machinery or equipment listed in paragraph b. or c. of the definition of **auto**.

See Ex. 2 at 63-69.

**CLAIM HANDLING & COVERAGE DISPUTE**

59. TIC received notice of an auto accident and the Underlying Lawsuit, pending in New Jersey, against the Aria Entities on or about February 13, 2025.

60. Following its initial review of the Underlying Lawsuit and the Policy, by correspondence dated February 13, 2025, TIC sent an acknowledgment and reservation of rights letter to Aria Group, Inc., and to Carlos A. Vargas.

61. TIC assigned a claim professional to evaluate and manage the claim.

62. TIC began promptly investigating the claim, including attempting multiple times to contact Ms. Bonilla, the individual purporting to speak on behalf of the insured, Aria Group, Inc.

63. Bonilla did not respond to TIC's repeated attempts at contacting her.

64. TIC did make contact with Mr. Abreu Vargas, and Mr. Eloi's attorney, and obtained their initial statements.

65. On or about February 26, 2025, TIC assigned defense counsel to represent the Aria entities which were named at that time in the Underlying Lawsuit.

66. On February 27, 2025, TIC sent letters to the Plaintiff and to Aria Group, Inc., advising that its coverage investigation was ongoing.

67. This investigation was ongoing due to a lack of communication by Bonilla or any other representative of Aria Group, Inc. despite repeated efforts to contact them by TIC.

68. TIC continued to investigate the relationships between the Aria Group Entities and Aria Group, Inc., the status of Abreu Vargas, who is an unlisted driver on the Policy, and the specific vehicle involved in the accident.

69. Upon obtaining multiple extensions of time and needing to file an answer in the Underlying Lawsuit on behalf of the Aria Entities that were then named in the Underlying Lawsuit, defense counsel assigned by TIC entered an appearance on behalf of the named Aria Entities.

70. TIC also accepted the defense of Abreu Vargas and Bonilla subject to a full and complete reservation of rights.

71. In April of 2025, Bonilla stated to TIC that the vehicle involved in the accident which is the subject of this Underlying Lawsuit was the 2015 Freightliner, not the 2014 Freightliner.

72. When the claim was reported to TIC, the scheduled auto identified as involved was the 2014 Freightliner.

73. At no time did any photographic or video evidence corroborate the involvement of the 2014 or 2015 Freightliners, or any other scheduled auto on the Policy.

74. TIC further learned of a separate suit, pending in New York, Index No. 50819/2024 (the "New York Lawsuit"), which was discontinued, via a Stipulation Discontinuing Action, while the Underlying Lawsuit which is the subject of this Complaint continued. A true and correct copy of the Stipulation Discontinuing Action of the New York Lawsuit is attached to this Complaint as Exhibit 3.

75. On February 14, 2025, TIC issued a letter to Aria Group, Inc. reserving all rights and citing to the Loss Conditions section of the Policy concerning Duties in the Event of Accident, Claim, Suit or Loss.

76. On March 5, 2025, TIC issued a letter to Aria Group Inc. reserving all rights, and citing to the Unlisted Driver Exclusion pursuant to the Policy and the Who An Insured provision of the Policy.

77. On April 8, 2025, TIC issued a letter to Aria Group Inc. reserving all rights and citing to the Unlisted Driver Exclusion pursuant to the Policy.

78. On April 22, 2025, TIC issued a letter to Aria Group Inc. reserving all rights pursuant to the Policy and citing to the Who Is An Insured provision of the Policy.

79. On May 2, 2025, TIC issued a letter to Aria Group Inc. c/o Arelis Bonilla reserving all rights and citing to an Unlisted Driver Exclusion pursuant to the Policy, and the Who Is An Insured provision of the Policy. The letter further cited to the Loss Conditions section of the Policy concerning Duties in the Event of Accident, Claim, Suit or Loss, and requesting a list of information.

80. Upon still receiving no complete reporting from Bonilla, or any other representative of Aria Group, Inc., or any of the other Aria Entities, on July 11, 2025, TIC sent a supplemental reservation of rights letter to Bonilla, requesting Aria Group's cooperation in its investigation into the facts of the loss.

81. TIC sent a second supplemental reservation of rights letter on August 24, 2026.

**COUNT I**

**DECLARATORY JUDGMENT AS TO THE DUTY TO DEFEND DAT EXPRESS, INC., ARIA GROUP MERGER, ARIA GROUP HOLDINGS, OR ARIA LOGISTICS**

82. Liability coverage is not available to DAT Express Inc., Aria Group Merger Six, LLC, Aria Group Holdings Six, Inc., or Aria Logistics, LLC under the Policy with respect to the claims at issue in the Underlying Lawsuit because none of the parties qualify as insureds—either Named Insureds, under the Policy's definition of an insured, or as Additional Insureds. Therefore, TIC can have no duty to defend the foregoing parties with respect to the same, and TIC seeks such declaration from the Court.

83. Pursuant to the Policy provisions set forth above, the Policy provides liability coverage—the only coverage which potentially applies to the claim in question—for "all sums an

'insured' legally must pay as damages because of 'bodily injury'…to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."

84. Whether there is a duty to defend is determined—in the first instance—by comparing the factual allegations contained within the four corners of the operative pleading to the Policy.

85. The facts alleged, and the claims asserted in and pending in the Underlying Lawsuit, as well as the information concerning the covered autos under the Policy cannot give rise to potentially covered claims or liabilities under the Policy.

86. Therefore, TIC seeks a declaration that it owes no duty to defend DAT Express Inc., Aria Group Merger Six, LLC, Aria Group Holdings Six, Inc., or Aria Logistics, LLC in the Underlying Lawsuit pursuant to the Policy and the operative Complaint filed in the Lawsuit.

**WHEREFORE**, TIC respectfully requests that this Court declare that TIC has no duty to defend DAT Express Inc., Aria Group Merger Six, LLC, Aria Group Holdings Six, Inc., or Aria Logistics, LLC, that no coverage is available to DAT Express Inc., Aria Group Merger Six, LLC, Aria Group Holdings Six, Inc., or Aria Logistics, LLC under the Policy with respect to the Claim or Underlying Lawsuit, and any such further relief the Court deems warranted.

## COUNT II

## DECLARATORY JUDGMENT AS TO THE DUTY TO INDEMNIFY DAT EXPRESS, INC., ARIA GROUP MERGER, ARIA GROUP HOLDINGS, OR ARIA LOGISTICS

87. Because a duty to defend is not owed to DAT Express Inc., Aria Group Merger Six, LLC, Aria Group Holdings Six, Inc., or Aria Logistics, LLC under the Policy, there is no duty to indemnify any of these parties. Therefore, TIC can have no duty to indemnify the foregoing parties with respect to the Underlying Lawsuit, and TIC seeks such a declaration from the Court.

88. Because the duty to defend is broader than the duty to indemnify, if it is determined that there is no duty to defend, there can be no corresponding duty to indemnify under the Policy.

89. For the same reasons set forth in Count I of this Complaint, neither DAT Express Inc., Aria Group Merger Six, LLC, Aria Group Holdings Six, Inc., nor Aria Logistics, LLC qualify as an insured—either a named insured, under the Policy's definition of an insured, or as an additional insured.

90. Because the Policy only provides liability coverage for "all sums an 'insured' legally must pay as damages because of 'bodily injury'…to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'," and because none of the Aria Entities qualify as an insured under the Policy, there is no indemnity coverage available for the Underlying Lawsuit under the Policy.

91. Therefore, TIC seeks a declaration that it owes no duty to indemnify DAT Express Inc., Aria Group Merger Six, LLC, Aria Group Holdings Six, Inc., or Aria Logistics, LLC pursuant to the subject Policy and the operative Complaint filed in the Underlying Lawsuit.

**WHEREFORE**, TIC respectfully requests that this Court declare that TIC has no duty to indemnify DAT Express Inc., Aria Group Merger Six, LLC, Aria Group Holdings Six, Inc., or Aria Logistics, LLC, that no coverage is available to DAT Express Inc., Aria Group Merger Six, LLC, Aria Group Holdings Six, Inc., or Aria Logistics, LLC under the Policy with respect to the Claim or Underlying Lawsuit, and any such further relief the Court deems warranted.

**COUNT III**

**DECLARATORY JUDGMENT AS TO THE DUTY TO INDEMNIFY BECAUSE NO SCHEDULED COVERED AUTO WAS INVOLVED IN THE LOSS**

92. Pursuant to the Policy provisions set forth above, the Policy provides liability coverage—the only coverage which potentially applies to the claim in question—for "all sums an 'insured' legally must pay as damages because of 'bodily injury'…to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."

93. The schedule of covered autos, set forth in Item Two at the Declarations Page of the Policy, outlines nine autos that are covered under the Policy.

94. Throughout the investigation of the Claim, Bonilla and other representatives of Aria Group, Inc., have asserted at different times, respectively, the 2014 Freightliner and the 2015 Freightliner were involved in the accident that made up this Claim.

95. Coverage under the Policy for the 2014 Freightliner expired on May 5, 2023, well before the date of loss on November 21, 2023.

96. Coverage under the Policy for the 2015 Freightliner was in effect until May 1, 2024, and was in effect on the date of loss on November 21, 2023.

97. The operative Third Amended Complaint is silent as to the issue of the VIN number and the identity of the vehicle that was actually involved in the accident.

98. The Third Amended Complaint does allege that the USDOT number of the Tractor was 3099406. See Ex. 1 at ¶ 4.

99. To the extent that none of the vehicles listed on the Policy's schedule of covered autos were involved in the accident that makes up this Claim, TIC seeks a declaration from this Court that it owes no duty to indemnify DAT Express Inc., Aria Group Merger Six, LLC, Aria Group Holdings Six, Inc., Aria Logistics, LLC, Aria Group, Inc., Arelis Bonilla, or Carlos A. Abreu Vargas, in the Underlying Lawsuit.

**WHEREFORE**, TIC respectfully requests that this Court declare that TIC has no duty to indemnify DAT Express Inc., Aria Group Merger Six, LLC, Aria Group Holdings Six, Inc., Aria Logistics, LLC, Aria Group, Inc., Bonilla, or Carlos A. Abreu Vargas in the Underlying Lawsuit, that no coverage is available under the Policy with respect to the Claim or Underlying Lawsuit, and any such further relief the Court deems warranted.

**COUNT IV**

**DECLARATORY JUDGMENT AS TO THE DUTY TO DEFEND ARELIS BONILLA**

100. Liability coverage is not available to Bonilla under the Policy with respect to the claims at issue in the Underlying Lawsuit because she does not qualify as an insured under the Policy—either a Named Insured, under the Policy's definition of an insured, or as an Additional Insured. Therefore, TIC can have no duty to defend Bonilla with respect to the Underlying Lawsuit, and TIC seeks such declaration from the Court.

101. Under the Policy, liability coverage is not available to Bonilla because she does not qualify as a named insured, nor does she qualify as an insured, as defined under 1. Who Is An Insured under the Policy. Further, no additional insured endorsement provides coverage for Arelis Bonilla as an insured.

102. Likewise, liability coverage is not available to Bonilla under the Policy with respect to the claims at issue in the Underlying Lawsuit because she does not qualify as an insured under the Commercial General Liability Coverage Part of the Policy.

103. While "Insured" is defined to mean, "Your members [and]…managers…but only with respect to the conduct of your business" under the Commercial General Liability Coverage Part of the Policy, which may extend to Bonilla in her role with Aria Group, Inc., the Commercial General Liability coverage part includes an Aircraft, Auto or Watercraft exclusion, which

precludes coverage, in part, for "Bodily injury…arising out of: a. The ownership, maintenance, use, or entrustment to others of any aircraft, auto or watercraft owned or operated by, or rented, leased, or loaned to, any insured; or b. Any auto you do not own, lease, hire, rent or borrow that is used in connection with your business." See Ex. 2 at 65-66; 69.

104. The auto exclusion of the Policy is explicit that, "This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the occurrence that caused the bodily injury or property damage involved the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft that is owned or operated by, or rented or loaned to, any insured." See Ex. 2 at 69.

105. Because Bonilla cannot be afforded coverage under either the Commercial General Liability coverage part of the Policy as an insured, nor under the Business Auto coverage part of the Policy, TIC seeks a declaration that it has no duty to defend Bonilla with respect to the Underlying Lawsuit.

**WHEREFORE**, TIC respectfully requests that this Court declare that TIC has no duty to defend Bonilla in the Underlying Lawsuit, that no coverage is available under the Policy with respect to the Claim or Lawsuit, and any such further relief the Court deems warranted.

## COUNT V

## DECLARATORY JUDGMENT AS TO THE DUTY TO INDEMNIFY ARELIS BONILLA

106. Because a duty to defend is not owed to Bonilla, there can be no duty to indemnify Bonilla under the Policy, and TIC seeks such a declaration from the Court.

107. Because the duty to defend is broader than the duty to indemnify, if it is determined that there is no duty to defend, there can be no duty corresponding to indemnify under the Policy.

108. For the same reasons set forth in Count IV of this Complaint, Bonilla does not qualify as an Insured under either the Commercial General Liability coverage part of the Policy, nor the Business Auto coverage part of the Policy.

109. Therefore, TIC seeks a declaration that it owes no duty to indemnify Bonilla in the Underlying Lawsuit pursuant to the Policy.

**WHEREFORE**, TIC respectfully requests that this Court declare that TIC has no duty to indemnify Bonilla in the Underlying Lawsuit, that no coverage is available under the Policy with respect to the Claim or Underlying Lawsuit, and any such further relief the Court deems warranted.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By: *<u>/s/Daniel J. Twilla</u>*
Daniel J. Twilla, Esq.
75 Hopper Place
Suite 301
Pittsburgh, PA 15222
Email: dtwilla@grsm.com
Direct: (412) 625-2694
*Attorney for Plaintiff,*
*Texas Insurance Company*

**CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

I, Daniel J. Twilla, do hereby certify to my own knowledge and based upon information available to me, that the matter in controversy is not the subject of any other action now pending in any court or in any arbitration or administrative proceeding.

*_/s/ Daniel J. Twilla*